Turley, J.
delivered the opinion of the court.
The contract of sale for the mills, distillery and two hundred head of hogs was made between Knuckolls and Lea, on the 22d day of April, 1887.
Knuckolls, as consideration, paid Lea in. hand eleven hundred and eleven dollars, and executed to him his several notes, one for eight hundred and eighty-nine dollars, due 1st day of January, 1838, one for two thousand dollars, due 1st January, 1839, one for two thousand dollars, due 1st day of January, 1840, one for two thousand dollars, due 1st January, 1841, and one for two thousand dollars, due 1st January, 1842. Lea executed his bond by which he bound himself in a *578 penalty of twenty thousand dollars to convey the premises sold, to Knuckolls on the 1st day of January, 1838, and agreed that provided said Knuckolls could not conveniently pay the notes above described, as they fell due, he would not sue or harrass him for the payment until he could have time to make payment out of the proceeds of the property.
On the 1st day of January, 1838, Lea executed a deed of conveyance for the premises thus sold to the defendant; and he entered into the possession of the land, mills, distillery, &c.
The complainant alleges that he soon found, after entering upon the possession of the premises, that he had been grievously cheated and defrauded by the defendant in this: that at the time of the purchase, he knew nothing of the income yielded by said mills and distillery, and in relation thereto relied wholly upon the representation of the defendant, and those who were in his service, by which he was induced to believe that an annual value of near two thousand dollars might be realized therefrom; when, in truth, he found that the annual income of said property was not near one-half of the amount thus represented.
But he further states, that notwithstanding he found himself thus defrauded and cheated, yet he felt disposed, in order to avoid a law suit with the defendant, to comply with the contract as made, and he accordingly afterwards paid the note of eight hundred and eighty-nine dollars, which was due 1st of January, 1838, and the note of two thousand dollars, due 1st of January, 1840, and about one hundred and thirty-two dollars of the note of two thousand dollars due 1st of January, 1839. Complainant further alleges that the defendant *579 in violation of his original contract of sale, by which he agreed not to sue or harrass him, if he could not conveniently pay the notes as executed, at the times they severally fell due, until he could have time to make payment out of the proceeds of the property, negotiated the- note for two thousand dollars due the 1st day of January, 1839, to Martin, Pleasants & Co., of New Orleans, who have sued thereon, notwithstanding the fact that the whole income of the property since he has had it in possession, though he has done the best he oould with it, does not amount to one-half of what he has already paid to Lea in consideration of said purchase.
The bill prays that Martin, Pleasants & Co. be enjoined from further proceeding to enforce at law, the suit against him upon the note of two thousand dollars due 1st of January, 1839, and that Lea be enjoined from negotiating the two notes for two thousand dollars each, due 1st January, 1841 and 1842, and that the contract be rescinded.
Now the sum and substance of the causes of complaint as set forth in the bill, are, that complainant gave greatly more for the property than it was worth; that he was induced to do this, by the fraudulent representations of Lea and his confederates, that the annual profit which might be realized from the property bought, was greatly more than he found it to be upon experiment, and that Lea had assigned one of the notes in violation of his agreement not to sue or harrass him, if he could not conveniently pay the notes as they fell due, until he could make payment out of the proceeds of the property, which he had not been able to do.
*580 There is nothing else in this bill but facts wholly immaterial, which go to show that this has been a very unfortunate speculation for the defendant; that at the time he made it, he was a man of good substance, and unembarrassed in his pecuniary affairs, and that he has been ruined by it.
Now the first observations we think proper to make upon this bill, is that it is in all probability demurrable upon its face.
The fact that the complainant has made a most unfortunate contract, one which has ruined him pecuniarily, can constitute no ground for relief in this court; there must be distinct and substantive grounds of equitable right, upon which he can stand, independent of the hardship of his case. And what are these as asserted?
1. That he was ignorant of the annual value of the property, and that he was induced by the fraudulent representations of Lea, the defendant, and his confederates, to believe that it was greatly more than it turned out to be in his possession.
2. That Lea transferred one of the notes, and that it was not convenient for him to pay it at maturity, and he has been sued upon it, in violation of the agreement that he was not to be harrassed or sued if he could not conveniently pay the notes as they fell due, but that he should have time to make payment out of the property.
As to the first ground, viz, the fraudulent representations of Lea as to the annual profits of the property sold, it is to be observed, first, if these representations, as they are charged to have been made, are to be considered, merely as exaggerated estimates of Lea, highly colored praises of the value of the property, such *581 as most men are apt to use in relation to their property when they are about to sell or exchange it, it amounts to nothing but mere puffing, upon which, it is egregious folly for a purchaser to rely; and it is no ground for equitable relief, that he has found himself disappointed in the expectations created by them.
But in the second place, if the representations in relation to this subject as they are charged in the bill, are to be considered as something more than exaggerated estimates of profits; that they are to be considered as fraudulent misrepresentations concocted by the defendant and others, with the view of cheating the complainant, and procuring from him a price for the property greatly beyond its actual value, yet the complainant alleges in the bill, that after he had ascertained this fact, after he had found himself cheated and defrauded by the defendant, he was still disposed to execute the contract .as made, and did afterwards pay the note for eight hundred and eighty-nine dollars, and the note for two thousand dollars, due 1st January, 1840, and one hundred and thirty-two dollars on the note for two thousand dollars, due 1st January, 1839; and it further appears in relation to this matter, that he never altered this, his disposition and intention, until about the 9th day of November, 1839, nearly two years after he entered into possession of the premises, and not until after he had been sued upon the note due January, 1839, by Martin, Pleasants & Co., the assignee of Lea.
The inference then is irresistible, that it is not because of the fraud practiced upon him in the misrepresentation of the value of the property that he seeks to rescind this contract; but because of the fact that he has been sued upon one of the notes before it was *582 convenient for him to pay it, in violation of what he considers his contract in relation thereto, and the fraud is thrown in as matter of make-weight.
If, then, with a full knowledge that he had been defrauded and cheated, he ratifies his contract, by a subsequent execution on his part of. its provisions, it is too late for him to ask the aid of a court of chancery in an attempt to set it aside for the cheat and fraud.
If these views be correct, there is then no subsisting equity arising out of the first ground of relief specified in this bill, upon which complainant can have relief.
2. Does the fact that the defendant transferred one of the notes before it fell due, and that the complainant was sued upon it before it was convenient for him to pay it, under the circumstances of this case, constitute any equitable ground for the relief sought by the bill?
We think most unquestionably not; the whole of the contract in relation to this matter even if it could furnish, under any circumstances, a ground for equitable interference, is too vagüe and uncertain, for specific execution, and it can in no point of view be considered as a reason for rescinding the contract of purchase.
To make the most of it in complainant’s behalf, it is an agreement on the part of the defendant not to harrass or sue him, until it is convenient for him to pay, or until he can make payment out of the proceeds of the property.
How is it possible for a court of chancery to enforce this contract? when will it be convenient to pay? when can payment be made out of the proceeds of the property? perhaps never; and is Lea never to be paid? If the complainant have any rights under the provisions of this agreement, which can be. enforced, it is in a court *583 of law, and not in a court of chancery, that the remedy must he sought.
The amended bill charges no additional facts, changing the state of this case, upon this view of it, from the position in which it is placed in the original bill.
But supposing that we are mistaken in the supposition that this bill is demurrable upon its face, for want of the assertion of an equitable right to relief, on the part of the plaintiff, how does the case stand upon the answer of the defendant and the proof?
It Is seen that we wholly exclude, as a ground of relief, the transactions arising out of the agreement on the part of the defendant not to harrass or sue the complainant if it should not be convenient for him to pay the notes as they fell due, until he had time to make payment out of the property; and the only question left is as to the alleged fraud practiced upon the ■complainant by the defendant whereby he was induced to give more than its worth for the property.
The answer expressly denies that any such fraud was practiced; asserts that the complainant was well acquant-ed with the property, had made examination and enquiry in relation to the annual profits arising from it, and that it had yielded for the space of about three years, during which the defendant had skillfully and diligently managed it, something near two thousand dollars a year, and that there was no misrepresentation in the statement to the complainant that it had done so. The truth of this assertion is, we think, sustained by the weight of proof in the cause; and it is not strange that such profits should have been realised in the prosperous years of 1835, 1836, 1837, and that they should have fallen oif one-half or more in the disastrous years of 1838, 1839, *584 1840, which followed, and which, unfortunately for the complainant, covered the period of his purchase, use and occupation of this property.
We do not, therefore, think there was any intentional or actual misrepresentation as to the profits which had been realised by the defendant from this property, nor that he intended to cheat or defraud the complainant in this particular, nor that he was defrauded and cheated by such representation.
But there is- an additional ground of fraud, not charged in the bill, but which has been sprung upon the answer and proof, and is now relied upon as constituting a ground of relief.
It will be seen by a reference to the bond executed by Lea on the 22d day of April, 1837, by which he bound himself to convey the premises to Knuckolls and put him in possession thereof on the 1st day of January, 1838, he also covenants that the land and bargained premises shall be delivered in their then condition, except the natural wear and tear, the mills to be in good running order.
In his answer, the defendant says “that he did, in pursuance of contract made in April, 1837, on the 1st day of January, 1838, put complainant in full and quiet possession of all and singular the land, mills, and stock, by him contracted for; that the same were in good condition, and in all respects as agreed upon; that complainant, on inspection of the same, deemed them so, and accepted the same as full compliance with respondent’s said contract.” Proof is taken upon this point, which we think prove satisfactorily, that at the time of the contract of sale for this property between the complainant and defendant, the mills were in a dilapidated condition; that the timbers *585 of the foundation were much decayed, that heavy repairs were needed, at least, if it were not even absolutely necessary to rebuild them; that this dilapidation must have been known to the defendant, and that the mills were not in good running order at the time they were delivered to the complainant. But the complainant cannot avail himself of this ground of relief, because he must have ascertained the condition of these mills in a very short period of time after he got possession, if they were dilapidated to the extent the proof seems to show, and yet he makes no complaint for near two years after he had been put into possession, admits that he was disposed to abide by the contract, though he found himself cheated and defrauded, and that he did continue to make payments upon his notes; until he was sued upon the one which had been transferred by Lea, in violation of his stipulation not to harrass or sue him, when he filed his bill complaining not of this fraud, but of his violation of his agreement not to sue or harrass, and of the fraud in relation to the profits made previously to the sale of the mills and distillery; showing that, among his grievances he had not estimated highly the dilapidated condition of the mills.
If we admit that a decree may be given upon an equitable ground not relied upon in the bill, upon proof contradicting an assertion in the answer, which is not responsive to any allegation in the bill, and not .rebutting any equity set up in the bill, and not admitting an equity in complainant, (which I am not prepared to do,) yet, still the complainant cannot make the fraud in misrepresenting and concealing the condition of the wood-work of the mills, available for the rescisión of this contract, because, by his subsequent conduct, after he must have *586 known of the existence of this fraud, he recognizes and affirms the contract as made.
But in addition to all this, there are other insuperable objections to a rescisión of this contract.
The complainant comes too late; he should have sought this remedy as soon as he ascertained that it was needed for the effectuation of justice to himself; he should not have waited until he was threatened by a suit upon one of the notes; he has waited until the property has been so materially deteriorated in value by neglect and lapse of time, that Lea cannot be put at all in the position he occupied in relation to the property before the sale, and he must suffer greatly by a rescisión, from this cause.
Moreover, the complainant, for some reason or other, after filing this bill, sold and conveyed the premises, the subject matter of this controversy, to other persons, which renders it improper to rescind the contract; that he so sold this property, is evidenced by his deeds of conveyance filed in the record. The fact that complainant after-wards procured reconveyances to be executed to him for the property thus previously sold by him, cannot alter the case in this respect, because the sale made by him is an express ratification of the contract between him and the defendant, and because we cannot see but that defendant’s title may be prejudiced by said sale, as we do not know upon what terms and conditions the re-sale was made, and we do not know but that there may be liens affecting the property on the part of the individuals to whom it was sold, and who afterwards recoveyed to the complainant.
It is perhaps true that according to strict chancery practice, this fact should have been charged in a cross-bill instead of the answer; but, surely, if we could decree *587 for complainant upon the statement in the answer that the mills were delivered in good running order, this being no matter of controversy raised by the bill, we might repel the complainant upon the allegation in the answer that he had sold and conveyed the premises, the same being supported by proof legitimate, viz, the deeds of conveyance executed by him.
Then, upon the whole view of the case, we affirm the decree of the chancellor, and dismiss complainant’s bill. The cost of this court will be divided, as those of the chancery court are by the order of the chancellor.